IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KEVIN MCGHIEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV. NO. SA-12-CV-00578-DAE |
| | ) | |
| METRO NEWS SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) PROVISIONALLY GRANTING PLAINTIFF'S MOTION TO
REMAND; (2) GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF
TIME; AND (3) GRANTING IN PART DEFENDANT'S MOTION FOR
<u>SANCTIONS</u>

On June 26, 2013, the Court heard Plaintiff Kevin McGhiey's Motion

to Remand and Alternative Motion to Enter <u>Sua Sponte</u> Order ("Motion to

Remand") ("Mot.," doc. # 29) and Defendant Metro News Service, Inc.'s Motion

for Sanctions against Plaintiff and Plaintiff's Attorney Pursuant to 28 U.S.C.

§ 1927 and the Court's Inherent Power ("Motion for Sanctions") (doc. # 31).

Adam Poncio, Esq., appeared at the hearing on behalf of Plaintiff Kevin McGhiey

("Plaintiff"); Nathan A. Schact, Esq., appeared at the hearing on behalf of

Defendant Metro News Service, Inc. ("Defendant").  After reviewing the Motions

and the supporting and opposing memoranda, the Court **GRANTS** Plaintiff's

1

Motion to Remand and **DENIES** Defendant's Motion for Sanctions.

<u>BACKGROUND</u>

Plaintiff has been employed by Defendant since January 2000. ("FAC," Doc. # 1 Ex. 2 pp. 11–17, at 1.)  According to Plaintiff, he suffered "severe back injuries" in 1993, 2002, and 2008, and is in "constant pain," but "has learned to live with the pain and is able to perform the essential functions of his job."  (<u>Id.</u> at 1–2.)  Plaintiff alleges that Defendant was aware of his initial back injury when Plaintiff was hired in 2000 and has been made aware of his subsequent injuries.  (<u>Id.</u> at 2.)

Plaintiff claims that he has also been diagnosed with "adjustment disorder with depressed mood and anxiety due to the constant harassment and stress" he has been subjected to at work.  (<u>Id.</u>)  He alleges that he attempted to commit suicide as a result of this disorder, and was subsequently hospitalized. (<u>Id.</u>)  According to Plaintiff, when he informed Defendant's President that he had been hospitalized and requested leave under the Family Medical Leave Act ("FMLA"), Defendant's President said that he was ashamed of Plaintiff.  (<u>Id.</u>) Plaintiff claims that he was paid one-half of his salary while on FMLA leave, despite the fact that another of Defendant's employees who took FMLA leave due to a heart condition was paid his full base salary.  (<u>Id.</u>)

2

Plaintiff asserts that he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2010, accusing Defendant of disability- and age-based discrimination, harassment, and retaliation. (Id.) On August 24, 2010, Plaintiff claims that he and Defendant entered into a Mediation Settlement Agreement. (Id. at 2–3.) Defendant promised that Plaintiff would not be discriminated or retaliated against and agreed to reinstate Plaintiff in his former position as a coordinator. (Id. at 3.) Plaintiff alleges that, since he signed the Mediation Settlement Agreement, he has been demoted to a Call Center Manager position and has been denied an administrative assistant. (Id.) He claims that he has less responsibility than individuals who previously reported to him. (Id.) According to Plaintiff, when he complained to his supervisor about being given less responsibility, his supervisor told him that according to FMLA standards, "Plaintiff only had to keep his title and pay and [Defendant] could change Plaintiff's responsibilities." (Id.)

Plaintiff initially filed suit in Texas state court on June 20, 2011, but failed to serve Defendant. (Doc. # 1 Ex. 2 pp. 3–9; Doc. # 1 Ex. 2 at 18.) He filed a First Amended Complaint ("FAC") on May 14, 2012. (FAC.) The FAC states: "This court has jurisdiction because the action arises under the Americans with Disabilities Act, 42 U.S.C. § 12102. . . ." (FAC at 1.) It alleges that Plaintiff has

suffered discrimination, harassment and retaliation because of his disability and his age, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the FMLA, 29 U.S.C. § 2601 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and the Texas Labor Code. (Id. at 3–4.) The FAC asserts that Defendant has discriminated against Plaintiff by failing to reasonably accommodate his disability and "by intentionally discriminating against Plaintiff because of his disability." (Id. at 5.) Finally, the FAC alleges that Defendant breached the Mediation Settlement Agreement it entered into with Plaintiff. (Id.) Plaintiff seeks damages for mental anguish and emotional distress suffered in the past and likely to be suffered in the future; lost wages; and attorney's fees and costs "under 42 U.S.C. § 12205." (Id. at 6.)

Defendant removed the case to this Court on June 12, 2012. (Doc. # 1.) The Notice of Removal states that federal jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff seeks relief under a federal statute; namely, the ADA. (Doc. # 1 ¶ 2.) On August 24, 2012, the parties filed joint scheduling recommendations (doc. # 7), and on August 29, 2012, the Court entered a Scheduling Order (doc. # 10). On September 14, 2012, Plaintiff and Defendant each filed an Alternative Dispute Resolution report. (Docs. ## 15, 16.) Plaintiff indicated that he was open to mediation; Defendant indicated that it was not. (Id.)

On November 14, 2012, Plaintiff filed with the Court witness, expert witness, and exhibit lists.  (Docs. ## 17, 19, 20.)  On December 5, 2012, both parties appeared at a pretrial status conference.  (Doc. # 22.)  On February 5, 2012, they filed a Joint Motion for Extension of Scheduling Order Deadlines (doc. # 27), which the Court granted on February 11, 2012 (doc. # 28).

Plaintiff filed the instant Motion to Remand on February 27, 2013.  (Mot.)  On March 1, 2013, Defendant filed a Response in opposition to Plaintiff's Motion to Remand ("Opp.," doc. # 30), as well as the Motion for Sanctions currently before the Court (doc. # 31).  On March 13, 2013, Defendant filed a Supplement to its Motion for Sanctions, noting that Plaintiff had not filed a Response in opposition within the time allotted by the Local Rules and asking the Court to grant the Motion for Sanctions as unopposed.  (Doc. # 35.)  On March 21, 2013, Plaintiff filed an untimely Response in opposition to Defendant's Motion for Sanctions (doc. # 36), as well as a Motion for Extension of Time to File Response (doc. # 37).

DISCUSSION

I.      Plaintiff's Motion to Remand

A defendant may remove a case from state to federal court if the case could have been filed in federal court originally.  Caterpillar Inc. v. Williams, 482

5

U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).  The procedure for removal is governed by 28 U.S.C. § 1446, which requires the defendant to file a notice of removal within 30 days of receiving service of the initial pleading.  28 U.S.C. § 1446(b).  The removal statutes are to be construed "strictly against removal and for remand."  Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100, 106 (5th Cir. 1996); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941) (acknowledging "the Congressional purpose to restrict the jurisdiction of the federal courts on removal" and the need for "strict construction of such legislation").

A plaintiff may move to remand a case to state court "on the basis of any defect other than lack of subject matter jurisdiction . . . within 30 days after the filing of the notice of removal," and the district court may remand a case for lack of subject matter jurisdiction at any time before final judgment.  28 U.S.C. § 1447(c).  "[S]ubject-matter jurisdiction is . . . 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Emp'rs Reinsur. Corp. v. Bryant, 299 U.S. 374, 382 (1937)). Unless otherwise provided by statute, federal district courts have jurisdiction over: (1) all civil actions arising under the Constitution, laws, or treaties of the United

States; and (2) civil actions between citizens of different states, where the matter in controversy exceeds $75,000, exclusive of interests and costs.  See 28 U.S.C. §§ 1331, 1332(a).  The party asserting federal jurisdiction—in this case, Defendant—carries the burden of establishing that it exists.  Physician Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

Plaintiff moves to remand on the basis that the Court lacks subject matter jurisdiction.  Plaintiff acknowledges that the ADA is mentioned in the FAC, but argues that his "intent was only to raise claims under the Texas Labor Code and [for] Breach of Contract."  (Mot. ¶ 23.)  According to Plaintiff, he referred to the ADA in the FAC only because the definition of "disability" under Texas law is identical to the definition of "disability" under the ADA.  (Mot. ¶¶ 23–26.)  Thus, Plaintiff argues, the case does not arise under federal law, and as Defendant does not assert that diversity jurisdiction is present, the Court lacks jurisdiction.  (Mot. ¶ 22.)  In its Response, Defendant points out that the FAC explicitly states: (1) that "[this] action arises under the Americans with Disabilities Act, 42 U.S.C. § 12102" (FAC at 1), and (2) that Plaintiff is entitled to attorney's fees and costs under the ADA (id. at 6).  (Opp. at 3–4.)  Defendant maintains that these portions of the FAC establish that Plaintiff intended to state a claim arising under federal law.

The Court must, then, determine whether it has jurisdiction to hear

this case.  As Plaintiff points out, Defendant has not established that diversity

jurisdiction exists, and does not argue in response to Plaintiff's Motion to Remand

that this Court may exercise jurisdiction on that basis.  Accordingly, the Court has

jurisdiction only if the case arises under federal law.  28 U.S.C. § 1331.  A case

arises under federal law within the meaning of § 1331 if "a well-pleaded complaint

establishes either that federal law creates the cause of action or that the plaintiff's

right to relief necessarily depends on resolution of a substantial question of federal

law."  Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S.

Cal., 463 U.S. 1, 27–28 (1983).  Thus, if the FAC states a claim under the ADA,

the Court has jurisdiction to hear this case.

     In order to prevail on a discrimination claim based on a disparate

treatment theory under the ADA,

> a plaintiff must first make a prima facie showing of discrimination by
> establishing that: (1) He is disabled or is regarded as disabled; (2) he
> is qualified for the job; (3) he was subjected to an adverse
> employment action on account of his disability; and (4) he was
> replaced by or treated less favorably than non-disabled employees.

McInnis v. Alamo Comm. Coll. Dist., 207 F.3d 276, 279–80 (5th Cir. 2000).  To

establish a prima facie case of discrimination based on failure to accommodate a

disability, a plaintiff must show that: (1) his employer is covered by the statute; (2)

he is an individual with a disability; (3) he can perform the essential functions of

the job with or without reasonable accommodation; and (4) his employer had

notice of the disability and failed to provide accommodation.  Mzyk v. N.E. Indep.

Sch. Dist., 397 F. App'x 13, 16 n.3 (5th Cir. Sept. 30, 2010).  Finally, in order to

prevail on a retaliation claim under the ADA, a plaintiff must show that: (1) he

engaged in a protected activity; (2) he suffered an adverse employment action; and

(3) there is a causal link between the first two elements.  See Jenkins v. Cleco

Power, LLC, 487 F.3d 309, 317 n.3 (5th Cir. 2007).

        The Court is not convinced that the FAC states a claim for disability-

based discrimination based on failure to accommodate or disparate treatment.

However, the Court concludes that the FAC does allege facts sufficient to state a

retaliation claim under the ADA.  It alleges that he engaged in protected activity by

filing a Charge of Discrimination, and was subsequently "demoted to a Call Center

Manager position" and denied an assistant.  (FAC at 4.)  The facts alleged in the

FAC establish that Defendant was aware of Plaintiff's protected activity, since

Defendant entered into a Mediation Settlement Agreement with Plaintiff regarding

the complaints he made to the EEOC.  (Id.) The allegations in the FAC also

indicate that Plaintiff's demotion and loss of responsibility occurred when he

returned to work following the execution of the Mediation Settlement Agreement

between the parties.  (Id.)  Defendant's knowledge of Plaintiff's protected activity

coupled with the proximity in time allows the Court to infer a causal link between the protected activity and adverse employment action.  Cothran v. Potter, 398 F. App'x 71, 73–74 (5th Cir. 2010) ("The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim.").  Viewed in light of the FAC's express declaration that it arises under the ADA,[1] these factual allegations state a claim under the ADA.  Furthermore, Plaintiff's state claims "are so related to" Plaintiff's federal claims "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (noting that a district court

---

[1]  The Court finds Plaintiff's argument that he referred to the ADA in the FAC only because the definition of "disability" under Texas law is modeled after the definition of "disability" under the ADA unpersuasive.  As Defendant points out, "the interpretation of 'disability' under the Texas Labor Code is evident through statutes and case law" (Opp. at 5); there was no need to refer to the ADA in the complaint in order to state a claim under the Texas Labor Code. Furthermore, Plaintiff's argument is belied by the fact that the mentions of the ADA in the FAC are unrelated to any discussion of the meaning of "disability." The Court notes that "the party who brings a suit is master to decide what law he will rely upon, and . . . does determine whether he will bring a 'suit arising under' the . . . [Constitution or laws] of the United States by his declaration or bill." Bell v. Hood, 327 U.S. 678, 682 (1946) (quoting The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)) (alterations in original).  It was within Plaintiff's control to assert whatever claims and use whatever words he desired, and he chose to explicitly state: "[This] action arises under the Americans with Disabilities Act, 42 U.S.C. § 12102. . . ."  (FAC at 1.)  To now disavow this wholly unambiguous statement is disingenuous.

may exercise jurisdiction over state law claims when there is "a common nucleus of operative fact" between the state and federal claims).  Thus, this Court has jurisdiction over the entire action, including Plaintiff's state-law claims, and removal was proper.

In Plaintiff's Motion to Remand, he asks the Court to allow him—in the event the Court concludes that the FAC states an ADA claim—to file a Second Amended Complaint withdrawing all federal claims.  (Mot. ¶ 27.)  Plaintiff contends that, if all federal claims are withdrawn, remand is appropriate.  (Id.)  In response, Defendant indicates that it does not oppose Plaintiff's voluntary dismissal of his federal claims, although it points out that (1) Plaintiff's request to amend his complaint is untimely, and (2) Plaintiff's proposed Second Amended Complaint still contains language indicating that he intends to pursue federal claims.  (Opp. at 4–5.)  Defendant also urges the Court to retain supplemental jurisdiction over Plaintiff's remaining state-law claims even if it allows him to file a Second Amended Complaint abandoning his federal claims.  (Opp. at 5.)

The Court will permit Plaintiff to file a Second Amended Complaint withdrawing all federal claims.  As Defendant noted, Plaintiff's request for leave to amend is untimely; the Court's scheduling order mandated that the parties file all motions to amend or supplement pleadings by October 15, 2012 (doc. # 10)—more

than four months before Plaintiff filed the instant Motion to Remand.

Nevertheless, Defendant has no objection to Plaintiff amending his complaint

(Opp. at 4), and Federal Rule of Civil Procedure 15(a)(2) provides that a court

"should freely give leave [to amend] when justice so requires."  The Court has no

reason to believe that justice would be done by refusing to allow Plaintiff to amend

his pleadings at this juncture if he no longer wishes to pursue any claims under the

ADA.  Accordingly, Plaintiff has leave to file a Second Amended Complaint

withdrawing all federal claims.

However, as Defendant observed, Plaintiff's proposed Second

Amended Complaint still contains language suggesting that Plaintiff intends to

seek remedies under the ADA.  The proposed Second Amended Complaint

Plaintiff attached to his Motion to Remand states: "[This] action arises under the

Americans with Disabilities Act, 42 U.S.C. § 12102, <u>as interpreted by the Texas

Labor Code</u>."  (Mot. Ex. D at 1 (emphasis added).)  The Court is perplexed by

Plaintiff's continued assertion that the case arises under the ADA.[2]  If Plaintiff

intends to assert only Texas state law claims, the action simply <u>does not</u> "arise

under" the ADA.  Adding the phrase "as interpreted by the Texas Labor Code"

---

[2]  At the hearing on June 26, 2013, Plaintiff's counsel stated that the inclusion of this language in the proposed Second Amended Complaint was simply an error on his part.

does not resolve this confusion.  The proposed Second Amended Complaint also still asserts that Plaintiff "is entitled to an award of attorney fees, expert fees and costs under 42 U.S.C. § 12205."  (Mot. Ex. D at 6.)  Attorney's fees, litigation expenses and costs are available under section 12205 <u>only</u> in an action commenced pursuant to the ADA.  42 U.S.C. § 12205 ("In any action . . . commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs. . . .").  If Plaintiff wishes to amend his complaint to withdraw his federal claims, he must remove all references to relief sought under federal statutes in order to eliminate confusion.  Assuming, <u>arguendo</u>, that Plaintiff will file a Second Amended Complaint withdrawing all federal claims, the Court must next determine whether remand is appropriate under these circumstances.

It is well-settled that a district court may remand to state court a removed case involving pendent state-law claims if all claims arising under federal law are withdrawn.  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 359, 357 (1988). The Fifth Circuit has stated that its "'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial. . . ."  <u>Batiste v. Island Records, Inc.</u>, 179 F.3d 217, 227 (5th Cir. 1999).  However, this rule is "neither mandatory nor

absolute," and whether remand is proper will depend upon "the specific circumstances of the case at bar."  <u>Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.</u>, 554 F.3d 595, 602 (5th Cir. 2009).  In determining whether it ought to relinquish jurisdiction over pendent state-law claims, a court must look to the statutory factors set forth in 28 U.S.C. § 1367(c).  Section 1367(c) states that district courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Courts must also look to "the common law factors of judicial economy, convenience, fairness, and comity."  <u>Enochs v. Lampasas Cnty.</u>, 641 F.3d 155, 159 (5th Cir. 2011).  "A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case," and "[i]f the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered . . . support a remand in the case."  <u>Carnegie-Mellon</u>, 484 U.S. at 357.

Looking first to the factors set forth in section 1367(c), the Court concludes that (2) and (3) favor remand.  Since Plaintiff has indicated that he intends to withdraw his federal claims, there are no claims over which this Court has original jurisdiction remaining and Plaintiff's Texas state law claims predominate.  See Smith v. Amedisys Inc., 298 F.3d 434, 447 (5th Cir. 2002) ("Considering the second and third factors, our analysis . . . affirms the trial court's dismissal of the only federal claims alleged. Thus, the state law claims now predominate over the nonexistent federal claims.").  The first factor does not weigh in favor of remand; Plaintiff's state law claims do not raise novel or complex issues of state law.  One of Plaintiff's remaining causes of action is a straightforward breach of contract claim.  The other is brought pursuant to the Texas Commission on Human Rights Act ("TCHRA"),[3] Tex. Lab. Code § 21.051, which Texas and federal courts interpret by looking to federal law.  See Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 473–74 (5th Cir. 2006) (analyzing the plaintiff's TCHRA claim under "analogous federal precedents and their interpretation of the [ADA]"); Pegram v. Honeywell, Inc., 361 F.3d 272, 285 n.13 (5th Cir. 2004) ("We have previously held that the TCHRA claim is analogous to the ADA claim, and

---

[3]  The Court assumes that Plaintiff's state disability discrimination claims are brought pursuant to the TCHRA; the FAC states only that Defendant violated "the Texas Labor Code," without identifying any specific provision.

15

generally would be treated similarly.") (citing <u>Talk v. Delta Airlines, Inc.</u>, 165 F.3d

1021 (5th Cir. 1999)); <u>NME Hosps., Inc. v. Rennels</u>, 994 S.W.2d 142, 144 (Tex.

1999) ("[I]n light of the Legislature's express purpose, we look to analogous

federal precedent for guidance when interpreting the Texas Act.").  As for the

fourth factor identified by section 1367(c), there are no compelling reasons for

declining jurisdiction.

   The Court must next consider whether the factors of judicial economy,

convenience, fairness and comity weigh in favor of remand.  The instant case had

been pending in federal court for more than eight months when Plaintiff filed his

Motion to Remand.  During that time, the Court had entered a scheduling order and

held a pretrial status conference (docs. ## 10, 22), but had not devoted a significant

amount of resources to the case.  <u>See</u> <u>Amedisys Inc.</u>, 298 F.3d at 447 (noting that

the principles of judicial economy, convenience and fairness weighed heavily in

favor of retaining jurisdiction where the district court had devoted many hours to

reviewing the parties' memoranda and researching the legal issues involved in a

"comprehensive summary judgment ruling").  The case is still at an early stage,

and the Court has not become "intimately involved in, and familiar with" its

merits.  <u>Parker & Parsley Petroleum Co. v. Dresser Indus.</u>, 972 F.2d 580, 587 (5th

Cir. 1992) (finding that judicial economy would not be served where the case had

been pending for nine months, the trial was still a few weeks away, and the court

had conducted only one hearing, a status conference); see also Batiste, 179 F.3d at

228 (holding that "further proceedings in the district court would prevent

redundancy and conserve scarce judicial resources" where the case had already

produced sixteen volumes of records during the three years it had been pending in

federal court, and the district court had considered multiple motions to dismiss

claims and grant summary judgment).  Accordingly, the Court concludes that

judicial economy would not be served by retention of Plaintiff's state law claims.

Nor will remand cause undue inconvenience or result in prejudice to

the Defendant.  See Parker & Parsley, 972 F.2d at 588 ("The fairness factor

concerns the prejudice to the parties that would arise from dismissal. . . .").

Defendant asserts that it will suffer inconvenience and prejudice because it has

begun to prepare a Motion for Summary Judgment "based on the Federal Rules"

(id. at 7), but the Court is not convinced that remand would prejudice Defendant on

this basis.  Defendant would not have to engage in new legal research, as "the

surviving claims [are] governed by state law, in either forum," and "any additional

factual research would have . . . to be conducted anyway."  Parker & Parsley, 972

F.2d at 587–88.  As for the time and expense Defendant has expended on discovery

thus far (see Opp. at 7–8), the Court has no reason to believe that discovery will be

unusable in state proceedings, see Parker & Parsley, 972 F.2d at 588 ("[T]he

parties would not have to repeat the effort and expense of the discovery process.").

Any inconvenience the parties may suffer by being forced to duplicate certain

pretrial measures according to Texas procedural rules—such as the exchange of

disclosures and witness and exhibit lists—will be slight.  As for comity, the Fifth

Circuit has held that remand "serve[s] the important interests of federalism and

comity" by acknowledging that "federal courts are courts of limited jurisdiction,

and often are not as well equipped for determinations of state law as are state

courts."  Id. at 588–89 (internal citations omitted).

Defendant's most forceful argument against remand is that it would

reward Plaintiff for engaging in dilatory and manipulative litigation tactics.

According to Defendant, "Plaintiff's attempt to withdraw his federal claims or

somehow explain away his statement of federal jurisdiction is an obvious attempt

to get back to State court, a forum Plaintiff is undoubtedly more comfortable in and

one in which he believes he has a chance of a better outcome."  (Opp. at 8.) The

Court agrees that Plaintiff's failure to move to remand as soon as Defendant

removed the case to federal court—in light of Plaintiff's insistence that he never

intended to state any federal claims—suggests that Plaintiff was initially willing to

submit to the jurisdiction of this Court but ultimately became dissatisfied with a

federal forum; in other words, it suggests that Plaintiff is engaging in some forum manipulation.  Plaintiff's eight-month delay in filing the instant Motion to Remand certainly cannot be explained by anything other than lack of diligence, at best, or bad faith, at worst.[4]  However, the Fifth Circuit has indicated that a plaintiff's "motion to amend his complaint to delete the federal claims is not a particularly egregious form of forum manipulation, if it is manipulation at all." Enochs, 641 F.3d at 160; see also Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 340 (5th Cir. 1999) (holding that the plaintiff's deletion of all federal claims in order to remand to state court was not "forum manipulation, but rather . . . a legitimate attempt to try her state law claims in the forum of her choice").  In any event, "[g]uarding against improper forum manipulation is only one of the important considerations we examine. . . ." Enochs, 641 F.3d at 160.  The possibility that Plaintiff has engaged in forum manipulation does not override the other factors the Court has considered, the majority of which weigh in favor of remand.

        In light of the "general rule" in this Circuit that courts ought to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed, Batiste, 179 F.3d at 227, the fact that two of the section 1367(c) factors

---

[4] At the hearing, Plaintiff's counsel asserted that he did not seek to remand the case immediately because the parties were discussing settlement options. Whatever the truth of that argument, it was not made in Plaintiff's briefing.

weigh in favor of remand, judicial economy and the interests of comity and
federalism will be served by remand, and Defendant will not suffer undue
prejudice or inconvenience, the Court concludes that it is proper to decline to
exercise supplemental jurisdiction over Plaintiff's remaining Texas state law
claims.  Plaintiff's Motion to Remand is therefore **PROVISIONALLY
GRANTED**.  Plaintiff has until July 3, 2013 to file a Second Amended Complaint
that contains no traces of allegations of federal jurisdiction.  If Plaintiff does
so—and if Plaintiff's counsel complies with the Court's order to reimburse the
Defendant, as discussed below—the Court will order this case remanded to the
state court.

II.    Defendant's Motion for Sanctions

Defendant's Motion for Sanctions asks the Court to order Plaintiff and
Plaintiff's attorney to pay Defendant's attorneys' fees and expenses incurred as a
result of defending the case in this Court.  (Doc. # 31 at 6.)  As a preliminary
matter, the Court must determine whether to consider Plaintiff's untimely
Response in opposition to Defendant's Motion for Sanctions or disregard it and
grant the Motion for Sanctions as unopposed.  Defendant's Motion for Sanctions
was filed on March 1, 2013.  (Doc. # 31.)  On March 13, 2013, Defendant filed a
Supplement to the Motion for Sanctions, alerting the Court to the fact that Plaintiff

had not filed a Response within the time provided by the Local Rules.  (Doc. # 35.)

Defendant asked the Court to grant its Motion for Sanctions as unopposed pursuant

to Local Rule CV-7(e)(2), which states that the court may grant a motion as

unopposed if there is no response within the time period prescribed by the rule.

(Id.)  On March 21, 2013, Plaintiff moved for an extension of time to file a

Response (doc. # 37) and filed a Response on the same day (doc. # 36).  In the

Motion for an Extension of Time, Plaintiff's counsel stated that the Response was

untimely because a member of his family died on March 6, 2013.  (Doc. # 37 at 2.)

Federal Rule of Civil Procedure 6(b)(1) provides that when an act

must be done within a specified period of time, the Court may, for good cause,

grant a motion to extend time after the time to act has expired if the party failed to

act because of excusable neglect.  In determining whether neglect is "excusable,"

the Court may consider the danger of prejudice to the nonmoving party, the length

of the delay and its potential impact on judicial proceedings, the reason for the

delay, and whether the movant acted in good faith.  Pioneer Inv. Servs. Co. v.

Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).  Here, Plaintiff's

Response was filed almost two weeks after the time provided by the Local Rules.

However, the delay had no impact on the proceedings, as the Court declined to

address the Motion for Sanctions until after having heard Plaintiff's Motion to

Remand.  Plaintiff's attorney has advanced a reason for the delay, and the Court has no reason to believe he did not act in good faith.  Finally, there is no danger of prejudice to Defendant if the Court grants Plaintiff's Motion for an Extension and considers Plaintiff's Response, since the Court would not grant a Motion for Sanctions without determining whether sanctions are warranted, regardless of whether it is opposed or not.  Accordingly, the Court **GRANTS** Plaintiff's Motion for an Extension (doc. # 37), and will consider the merits of Defendant's Motion for Sanctions rather than granting it as unopposed.

Defendant seeks sanctions under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Sanctions under 28 U.S.C. § 1927 "are punitive in nature and require 'clear and convincing evidence, that every facet of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'"  Bryant v. Military Dep't of Miss., 597 F.3d 678, 694 (5th Cir. 2010) (quoting Procter & Gamble Co. v. Amway Corp., 280 F.3d 519, 525–26 (5th Cir. 2002)).  "Under § 1927, only those fees and costs associated with 'the persistent prosecution of a meritless claim' may be awarded,"

22

Browning v. Kramer, 931 F.3d 340, 345 (5th Cir. 1991) (quoting Thomas v.

Capital Sec. Serv., Inc., 836 F.2d 866, 875 (5th Cir. 1988)), or fees and costs

incurred based on "'the irresponsible manner in which the litigation was conducted

[which] further multiplied . . . needless proceedings,'" id. (quoting Lewis v. Brown

& Root, Inc., 711 F.2d 1287, 1292 (5th Cir. 1983)).

   The Court finds that the irresponsible manner in which this litigation

has been conducted has multiplied needless proceedings.  Plaintiff's original

Complaint explicitly stated that it arose under the ADA, and asserted that Plaintiff

was entitled to an award of attorney's fees pursuant to 42 U.S.C. § 12205.  When

Plaintiff amended his pleadings and filed a First Amended Complaint in May 2012,

he again asserted that the case arose under the ADA, and again asserted a right to

relief under 42 U.S.C. § 12205.  Given these repeated assertions in Plaintiff's

pleadings that his claims arose under federal law, Defendant was justified in

removing the case to this Court.  At the hearing, Plaintiff's counsel explained that

the references to federal law were included in Plaintiff's pleadings inadvertently,

and acknowledged that the error was due to his own carelessness.   But for

Plaintiff's counsel's carelessness, Defendant would not have been forced to defend

against Plaintiff's Motion to Remand.  Accordingly, the Court concludes that

Defendant is entitled to reimbursement from Plaintiff's counsel for the costs and

attorney's fees incurred in defending against the instant Motion to Remand.  Cf. Greer v. Richardson Indep. Sch. Dist., 471 F. App'x 336, 340 (5th Cir. 2012) (upholding an award of attorney's fees under § 1927 where the magistrate judge found that the "paucity of citations" and "use of informal language that seesaws between flippancy and condescension" in the plaintiff's briefs, as well as the fact that the brief was "obviously not proofread," reflected a reckless disregard for its duty to the Court).  Defendant's Motion for Sanctions is therefore **GRANTED IN PART**.  Plaintiff's counsel is **ORDERED** to reimburse Defendant for costs and attorney's fees incurred in defending against Plaintiff's Motion to Remand.

CONCLUSION

For the foregoing reasons, the Court **PROVISIONALLY GRANTS** Plaintiff's Motion to Remand (doc. # 29), **GRANTS** Plaintiff's Motion for an Extension of Time to File Response (doc. # 37), and **GRANTS IN PART** Defendant's Motion for Sanctions (doc. # 31).  The Court will retain jurisdiction over this action until (1) Plaintiff files a Second Amended Complaint that fully abandons all federal claims, and (2) Plaintiff's counsel has reimbursed Defendant. When the Court is satisfied that the Plaintiff has complied with the terms of this Order, it will remand the case to state court immediately.  The matter of calculation of appropriate and reasonable attorney's fees is hereby remanded to the Magistrate

24

Judge unless the parties advise the Court that they have agreed upon the amount of fees and costs.

IT IS SO ORDERED.

DATED: San Antonio, Texas, July 1, 2013.

_____
David Alan Ezra
Senior United States District Judge